**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **M.D.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | |
| | : | |
| **Mahoning County, Ohio,** | : | |
| **Damon K. Perry,** | : | |
| **Jerry Greene,** | : | **JURY DEMAND** |
| **William Cappabianca,** | : | **ENDORSED HEREON** |
| **Kenneth Kountz,** | : | |
| **Gwendolyn Graham,** | : | |
| **Matthew Dugan,** | : | |
| **Joseph Varone,** | : | |
| **William Scott Wilson,** | : | |
| **Joseph Hood,** | : | |
| **Thomas Connolly,** | : | |
| **George D. Starr, and** | : | |
| **John/Jane Doe #22–50, names and** | : | |
| **identification numbers unknown,** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

For her Complaint, Plaintiff M.D. alleges:

1.     This is a re-filed action of a prior action with case number 4:25-cv-02414.

2.     The prior action was filed within the statute of limitations.

3.     This re-filed action is timely filed as to all Defendants under the Ohio Savings Statute.

4.      This action arises out of the negligent, reckless, and deliberately indifferent actions by staff and supervisors of the Mahoning County, Ohio Jail. These actions caused the preventable rape of M.D., an incarcerated woman in the jail's exclusive custody and control.[1]

5.      At all relevant times, M.D. was incarcerated at the Mahoning County Jail. Her responsibilities included collecting, cleaning, and charging inmate tablets at the end of each day. M.D. performed this duty at night, after all other incarcerated women were confined to their cells. The tablets were stored and charged in a jail common area equipped with video camera surveillance. When M.D. would walk the halls to collect each incarcerated woman's tablet, a guard would accompany her, unlocking and then locking cell doors along the way.

6.      Mahoning County Sheriff's Deputy Damon K. Perry worked in the jail on November 9, 2023 and November 30, 2023. On both days, Perry was responsible for assisting M.D. with the collection of the tablets.

7.      Before M.D. and Perry began that task on November 9, 2023, Perry moved furniture in the classroom where the tablets were stored overnight in order to maneuver M.D. into a camera blind spot. Then, when M.D. returned and began cleaning the tablets in the camera blind spot, Perry grabbed her, held her facing away from him, and forcibly sexually assaulted her from behind. Perry sexually assaulted M.D. again on November 30, 2023. He used a nearly identical modus operandi.

8.      Both jail leadership and Mahoning County itself knew or should have known of the substantial risk that M.D. would be sexually assaulted by jail staff. Other incarcerated women had complained of sexual abuse by staff within the jail. But despite these complaints, jail

---

[1]      In the prior filed action, Plaintiff received permission to proceed under a pseudonym to protect her privacy as a survivor of sexual assault by a government actor.  Plaintiff will file a motion to proceed by pseudonym in this re-filed action.

leadership failed to take meaningful, reasonable steps to prevent future sexual assaults of incarcerated women by jail agents or employees. Their knowing inaction amounts to deliberate indifference.

9. At all relevant times, Mahoning County, Ohio maintained an express policy, custom, or a widespread and established pattern and practice of knowingly or recklessly allowing incarcerated women within its custody to endure sexual abuse at the hands of its own employees or agents, violating the due process clause of the Fourteenth Amendment to the United States Constitution.

## THE PARTIES

10. Plaintiff M.D. is an individual and resident of, Ohio.

11. Defendant Mahoning County is a political subdivision within the State of Ohio. It is subject to suit under 42 U.S.C. § 1983 and under Ohio Revised Code Chapter 2744.

12. Defendant Damon K. Perry is an individual and resident of Mahoning County, Ohio. At all relevant times, he acted as a Corrections Officer for the Mahoning County Jail and operated under color of state law. He is sued in his personal capacity.

13. Sheriff Jerry Greene is a natural person and the Mahoning County Sheriff, who heads the Sheriff's Office, which operates the Mahoning County Jail. He is sued in both his official and personal capacity.

14. Defendant William Cappabianca is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times he acted as the Warden for the Mahoning County Jail and operated under color of state law. He is sued in both his official and personal capacity.

15. Defendant Kenneth Kountz is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning

3

County Jail. At all relevant times he held a supervisory position at the Mahoning County Jail and operated under the color of state law. He is sued in both his official and personal capacity.

16.     Defendant Gwendolyn Graham is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times she held a supervisory position at the Mahoning County Jail and operated under the color of state law. She is sued in both her official and personal capacity.

17.     Defendant Matthew Dugan is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times he held a supervisory position at the Mahoning County Jail and operated under the color of state law. He is sued in both his official and personal capacity.

18.     Defendant Joseph Varone is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times he held a supervisory position at the Mahoning County Jail and operated under the color of state law. He is sued in both his official and personal capacity.

19.     Defendant William Scott Wilson is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times he held a supervisory position at the Mahoning County Jail and operated under the color of state law. He is sued in both his official and personal capacity.

20.     Defendant Joseph Hood is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times he held a supervisory position at the Mahoning County Jail and operated under the color of state law. He is sued in both his official and personal capacity.

4

21. Defendant Thomas Connolly is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times he held a supervisory position at the Mahoning County Jail and operated under the color of state law. He is sued in both his official and personal capacity.

22. Defendant George Starr is a natural person and employee or agent of Mahoning County and the Mahoning County Sheriff's Office, which operates the Mahoning County Jail. At all relevant times he held a supervisory position at the Mahoning County Jail and operated under the color of state law. He is sued in both his official and personal capacity.

23. Jane and John Does # 22–50 are current or former employees and/or agents of the Mahoning County Sheriff's Office who were working during the events detailed in this Complaint. Upon information and belief, some of these Defendants served in supervisory capacities over both Defendant Perry and/or Plaintiff M.D. Plaintiff avers that, despite reasonable efforts, Plaintiff was unable to discover the full names or addresses of Jane and John Does # 1–50 prior to the commencement of the original filed action. Plaintiff amended the complaint in the original filed action to add the names of John and Jane Does #1–21 (including #1 as Kevin Myers, #2 as Gerald D'angelo, #4 as Gwendolyn Graham, #5 as Matthew Dugan, #6 as Henry Budaker, #7 as Salvatore Pascarella, #8 as Joseph Varone, #9 as Robert Kopey, #10 as William Scott Wilson, #11 as Bahia Algahmee, #12 as Ann Wallace, #13 as Penny Kephart, #14 as Sean McVeigh, #15 as Gary Bielecki, #16 as Anthony Lucas, #17 as Randall Pegg, #18 as Joseph Hood, #19 as Gari Hyshaw, #20 as Thomas Connolly, and # 21 as Sergeant George D. Starr).[2] Plaintiff reserves the right to substitute a named defendant for the remaining Jane/John Doe(s) as defendants upon discovery of the identity of any such individuals or entities that may

---

[2]  Plaintiff discovered that John Doe #3 was Kenneth Kountz, who was already named in the original complaint in the prior action.

have deviated from a duty to Plaintiff. Plaintiff further reserves the right to amend the complaint to re-join a previously named defendant not included in this re-filed action.

24.     Discovery is needed to fully identify all jail staff responsible for the deliberately indifferent mistreatment of M.D. on November 9, 2023 and November 30, 2023. Plaintiff will amend the complaint to specifically name additional responsible parties as they are revealed through discovery.

### JURISDICTION AND VENUE

25.     At all relevant times, the defendants acted under color of state law for purposes of 42 U.S.C. § 1983, because they committed their relevant conduct within the scope of their work as employees or agents of Mahoning County.

26.     This Court has original jurisdiction over the federal claims in this matter under 28 U.S.C. § 1331 because they arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction over the state law claims in this matter under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims.

27.     This Court has personal jurisdiction over the Defendants because they are residents of or have their principal place of business in Ohio, because they committed their tortious and unlawful acts and omissions in Ohio, and because their tortious and unlawful acts and omissions caused injury in Ohio.

28.     Venue is proper because one or more of the defendants reside in this district and all defendants are residents of Ohio for venue purposes, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND FACTUAL ALLEGATIONS

29.     M.D. had a difficult childhood. In her late teens, M.D.'s parents drove her to the nearest Children's Services office, told the staff they could not handle her behavioral needs, and left her there. Soon after, they permanently surrendered their custodial rights. M.D. became a ward of the state until adulthood.

30.     These and other traumas eventually snowballed into drug use, and M.D. became ensnared in a cycle of low-level criminal activity propelled by her untreated mental health conditions and unhealed trauma.

31.     In early 2023, M.D. was charged with various federal drug-related charges in the United States District Court for the Northern District of Ohio.

32.     While awaiting disposition of these charges, M.D. was incarcerated at the Mahoning County Jail.

33.     Beginning around August of 2023, jail staff assigned M.D. the responsibility of collecting inmate tablets for cleaning and recharging each night.

34.     Customarily, all incarcerated women at the jail were locked in their cells starting at 6:00 P.M. They were permitted to use their tablets until 10:00 P.M. Then, M.D., with the help of a jail guard, collected the tablets, wiped them with cleaning supplies, and left them in a classroom to recharge overnight.

35.     Upon information and belief, Defendant Damon Perry was hired by the Mahoning County Sheriff's Office in October of 2008.

36.     Perry was the jail employee or agent assigned to assist M.D. on November 9, 2023 and November 30, 2023.

37.     On November 9, 2023, M.D. collected the tablets as she had routinely since August.

38.     When she returned to the jail classroom, M.D. noticed that a table was out of place. It had been moved to an unusual location in the room.

39.     M.D. would later learn that this placement moved the table into a video surveillance blind spot.

40.     M.D. approached the tablet cleaning and charging station to begin wiping down the tablets as usual.

41.     Suddenly, Perry grabbed M.D., pulled down her pants, and forcibly sexually assaulted her from behind.

42.     M.D. froze. She continued her routine of cleaning the tablet in her hands, too shocked to know how to respond.

43.     When the sexual assault was over, M.D. returned to her cell.

44.     Over the next few weeks, M.D. showed increasing symptoms of post-traumatic stress.

45.     At no point during her stay in the Mahoning County Jail did M.D. receive any orientation, instruction, or guidance on how to report such an assault to jail officials.

46.     Even if a complaint process was available, M.D. felt that any report would be met with retaliation, which would only worsen her circumstances.

47.     Because of this, M.D. struggled to move on from Perry's November 9, 2023 sexual assault without help. She confided in her cell mate and attempted to manage her PTSD symptoms.

48. Then, on November 30, 2023, Perry sexually assaulted M.D. again. Perry exhibited the same modus operandi for this second assault. Again, the table was moved to a video blind spot. Again, M.D. completed her work assignment as expected, only to have Perry assault her again in the same way and in the same location.

49. Upon information and belief, after this second assault, someone else reported to jail staff that M.D. was being sexually abused.

50. The report led to an investigation, federal prosecution, and conviction of Damon Perry for various felonies related to the sexual abuse of M.D., a person in federal custody who was temporarily in the care and custody of the Mahoning County Jail.

51. As early as 2014, or possibly earlier, Perry was widely known amongst staff and inmates at the jail to be inappropriate with incarcerated women and widely rumored to have had sexual interactions with incarcerated women.

52. Perry was known to take advantage of opportunities to single women out for inappropriate contact and comments.

53. Upon information and belief, jail leadership assigned Perry to be a "floater," moving around to different units and assignments, to ensure he would not consistently be around the same incarcerated women.

54. Other incarcerated women complained about Perry's sexual abuses as early as 2018, or possibly earlier.

55. For example, in 2020, an inmate reported to jail staff—including but not limited to Sergeant Graham, Sergeant Starr, and Sergeant Wilson—that Perry had engaged in inappropriate sexual behavior in camera blindspots with an incarcerated woman who had been assigned to pod cleaning duties.

56. Jail supervisors—including but not limited Sergeant Starr, Sergeant Wilson, Sergeant Graham, Lieutenant Varone, Lieutenant Dugan, and Captain Hood—conducted an investigation.

57. Video footage showed Perry moving the victim into camera blindspots.

58. These supervisors then interrogated the victim, who asked if she needed legal counsel.

59. Under the circumstances, it was obvious that the victim feared consequences if she spoke up.

60. Because Perry and the victim did not confirm the inappropriate sexual contact, the supervisors dropped the matter and took no further investigatory or remedial steps.

61. Further, inmates and staff knew that Perry had victimized the woman who held the tablet position prior to Perry.

62. Perry regularly had sexual interactions with that woman over a period of months in 2023.

63. The woman talked about what happened with Perry openly amongst other incarcerated women.

64. Upon information and belief, jail staff and jail leadership knew that Perry had inappropriate sexual interactions with the woman.

65. Despite having actual and/or constructive notice of these complaints years prior to Perry's sexual assault of M.D., Defendants negligently, recklessly, wantonly, and with deliberate indifference failed to take reasonable steps to protect incarcerated women, including M.D., from Perry's known sexual abuse.

66. Defendants also affirmatively continued to assign Perry to work in the jail, giving him ongoing access to helpless victims, including M.D.

67. Defendants also failed to adequately supervise Perry, allowing him to exploit known camera blind spots to perpetrate his sexual abuse of M.D.

68. Defendants provided no inmate orientation and no inmate training on the Prison Rape Elimination Act or on submitting reports or complaints about staff misconduct.

69. Defendants negligently, recklessly, wantonly, and with deliberate indifference revealed, allowed to be revealed, and failed to take reasonable steps to protect the contents of kites, reports, and complaints, including those with sensitive information.

70. Defendants negligently, recklessly, wantonly, and with deliberate indifference, allowed or failed to take reasonable steps to prevent retaliation for inmate reports and complaints.

71. Upon information and belief, M.D. and other incarcerated people did not report sexual abuse and other misconduct by Perry for fear of retaliation and exposure.

72. These acts and omissions amounted to deliberate indifference, negligence, bad faith, wantonness or recklessness on the part of all Defendants. By failing to take reasonable steps to prevent Perry from sexually abusing M.D., Defendants proximately caused M.D.'s physical and emotional pain and violated her right to due process under the Fourteenth Amendment to the United States Constitution.

**COUNT ONE – 42 U.S.C. § 1983:**
**VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS**
**(PLAINTIFF vs. DAMON K. PERRY)**

73. Plaintiff incorporates the above allegations by reference as if fully restated here.

74. At all relevant times, Perry acted under color of state law.

11

75.    Perry violated M.D.'s right to due process under the Fourteenth Amendment to the United States Constitution when he sexually assaulted her on or about November 9 and November 30, 2023.

76.    As a direct and proximate result, M.D. suffered catastrophic injury, substantial physical harm, emotional harm, pain, suffering, and associated future medical bills and other losses.

**COUNT TWO – 42 U.S.C. § 1983:**
**VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS**
**(PLAINTIFF vs. ALL INDIVIDUAL DEFENDANTS)**

77.    Plaintiff incorporates the above allegations by reference as if fully restated here.

78.    At all relevant times, Defendants acted under color of state law.

79.    The individual Defendants knew, or reasonably should have known, of a serious risk that M.D. would be sexually assaulted by Perry when he was assigned to work in the Mahoning County Jail.

80.    The individual Defendants acted with deliberate indifference and recklessness by failing to reasonably respond in the face of an unjustifiably high risk of danger to M.D. when Defendants either knew or should have known about the risk.

81.    The individual Defendants thus violated M.D.'s right to due process under the Fourteenth Amendment to the United States Constitution by, with deliberate indifference and while acting under color of state law, failing to adequately respond to inmate complaints of sexual abuse by Perry, failing to adequately supervise Perry, failing to adequately hire, train, or retain Perry and other corrections officers, and allowing and failing to prevent retaliation against inmates for submitting complaints and reports.

82.     As a direct and proximate result, M.D. suffered catastrophic injury, substantial physical harm, emotional harm, pain, suffering, and associated future medical bills and other losses.

**COUNT THREE – 42 U.S.C. § 1983:**
**VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS RIGHTS**
**(PLAINTIFF vs. DEFENDANTS MAHONING COUNTY, GREENE, CAPPABIANCA,**
**AND KOUNTZ  IN THEIR OFFICIAL CAPACITIES)**

83.     Plaintiff incorporates the above allegations by reference as if fully restated here.

84.     At all relevant times, Defendants Mahoning County, Green, Cappabianca, and Kountz Ohio acted under color of law.

85.     At all relevant times, Defendants Mahoning County, Ohio, Greene, Cappabianca, and Kountz maintained express county policies, customs, and widespread and sustained patterns or practices of failing to adequately respond to inmate complaints of sexual abuse by Perry, failing to adequately supervise Perry, and failing to adequately hire, train, or retain Perry and other corrections officers.

86.     Upon information and belief, these policies, customs, and patterns and practices persisted for years, exposing a wide group of incarcerated women to Perry's injurious conduct. Other incarcerated women gave Defendants Mahoning County, Greene, Cappabianca, and Kountz actual notice that Perry had been sexually assaulting incarcerated women as early as 2018, or possibly earlier.

87.     Despite this notice, Defendants Mahoning County, Greene, Cappabianca, and Kountz continued to employ or contract with Perry and assign him to work shifts in the Mahoning County Jail, knowing that he posed a grave risk of sexual abuse to incarcerated women. These Defendants' sustained pattern and practice of hiring, retaining, and assigning such

13

unqualified and dangerous staff proximately caused Perry's sexual assault of M.D. on November 9, 2023 and November 30, 2023.

88.     Defendants Mahoning County, Greene, Cappabianca, and Kountz therefore acted with deliberate indifference by continuing to contract with or employ Perry when he consistently abused and jeopardized the safety of incarcerated women at the Mahoning County Jail despite multiple known prior sexual assaults committed by Perry.

89.     At all relevant times, Defendants Mahoning County, Greene, Cappabianca, and Kountz maintained express county policies, customs, and widespread and sustained patterns or practices of deterring inmate complaints and reports, revealing to staff and other inmates complaint and report contents including sensitive information, failing to provide any inmate orientation or training on complaint and report processes including on related to sexual abuse and the Prison Rape Elimination Act, and allowing and failing to prevent retaliation against inmates for submitting complaints and reports, including complaints and reports about staff conduct.

90.     Upon information and belief, these county policies, customs, and patterns and practices persisted for years, deterring complaints and reports about Perry's misconduct throughout the time he was employed at the jail.

91.     Upon information and belief, Perry committed similar misconduct against other inmates before he sexually assaulted M.D. in November 2023.

92.     Upon information and belief, some other inmates did not report Perry's misconduct for fear of exposure and retaliation due to Defendants Mahoning County's, Greene's, Cappabianca's, and Kountz's policies, customs, and patterns and practices relating to complaints and reports.

14

93. M.D. and other inmates did not report Perry after the first November 2023 sexual assault for fear of exposure and retaliation due to Defendants Mahoning County's, Greene's, Cappabianca's, and Kountz's county policies, customs, and patterns and practices relating to complaints and reports.

94. Defendants Mahoning County, Greene, Cappabianca, and Kountz knew or should have known that these policies, customs, patterns and practices would deter reports and complaints and allow perpetrators continue their abuse.

95. Defendants Mahoning County, Greene, Cappabianca, and Kountz therefore acted with deliberate indifference when it failed to change these policies, customs, and patterns and practices.

96. As a direct result of Defendant Mahoning County's, Greene's, Cappabianca's, and Kountz's county policies, customs, patterns and practices, and deliberate indifference, Perry faced no disciplinary consequences for his prior misconduct, remained employed at the jail, continued and escalated his misconduct, and sexually assaulted M.D. on or about November 9 and November 30, 2023.

97. Defendants Mahoning County's Greene's, Cappabianca's, and Kountz's county policies, customs, and deliberate indifference proximately caused a deprivation of M.D.'s right to due process of law under the Fourteenth Amendment to the United States Constitution.

98. Defendants Mahoning County's, Greene's, Cappabianca's and Kountz's policies, customs, and deliberate indifference also proximately caused M.D. catastrophic injury, substantial physical harm, emotional harm, pain, suffering, and associated future medical bills and other losses.

15

**COUNT FOUR – RECKLESS HIRING, TRAINING,
EMPLOYMENT, SUPERVISION, AND RETENTION (STATE LAW):
(PLAINTIFF vs. DEFENDANTS SHERIFF JERRY GREENE, CAPPABIANCA,
KOUNTZ, AND JANE/JOHN DOES #1-17)**

99.     Plaintiff incorporates the above allegations by reference as if fully restated here.

100.    Defendants Sheriff Greene, Cappabianca, Kountz, and Jane/John Does #1-17 had a duty to exercise reasonable care in the hiring, employment, training, retention, and supervision of their employees, staff, and other personnel so as not to create an unreasonable risk of harm to Plaintiff and others.

101.    Defendants were negligent, reckless, and wanton in the hiring, employment, training, supervision, and retention of Perry as both a Mahoning County Sheriff's Deputy and as a Mahoning County Jail agent or employee.

102.    Defendants had a duty to institute appropriate and reasonable policies and procedures for the supervision of jail staff, including but not limited to: (i) identifying, documenting, and addressing known complaints that Perry sexually abused incarcerated women, (ii) establishing protocols that prevent jail staff, especially those with histories of misconduct, from having unsupervised, solitary access to incarcerated women, (iii) preventing the occurrence of security camera blind spots, and (iv) establishing policies regarding complaints against jail staff.

103.    Defendants' failure to implement and/or enforce such policies or procedures proximately caused M.D. to endure repeated sexual assaults by Perry, a jail agent or employee, resulting in catastrophic injury, substantial physical harm, emotional harm, pain, suffering, and associated future medical bills and other losses.

16

## COUNT FIVE –RECKLESS BREACH OF DUTY (STATE LAW)
## (PLAINTIFF vs. ALL DEFENDANTS)

104.    Plaintiff repeats and realleges the allegations above as if fully restated herein.

105.    At all relevant times, Defendants owed Plaintiff a duty to exercise reasonable care.

106.    Defendants were reckless and/or wanton and breached their duty to exercise reasonable care by failing to act reasonably to prevent Plaintiff from being subject to repeated sexual abuse.

107.    As a direct and proximate result of Defendants' recklessness and/or wantonness, Plaintiff suffered catastrophic injury, substantial physical harm, emotional harm, pain, suffering, and associated future medical bills and other losses.

**WHEREFORE,** Plaintiff respectfully demands judgment in her favor and against all Defendants, jointly and severally, for compensatory damages in an amount exceeding $75,000 and to be further determined at trial, for punitive damages, for the costs, expenses, and attorney fees of this action, and for all such other relief the Court deems proper.

Respectfully submitted,

/s/ Barton R. Keyes

| | |
|---|---|
| Barton R. Keyes | (0083979) |
| Kimberly E. Burroughs | (0095694) |
| Spencer J. Hattemer | (0102663) |

Cooper Elliott
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (Facsimile)
bartk@cooperelliott.com
kimb@cooperelliott.com
spencerh@cooperelliott.com

Evan E. North (*pro hac vice* forthcoming)
North Law PLLC
1900 Market Street, Suite 800
Philadelphia, Pennsylvania 19103
(202) 921-1651
evan@northlawpllc.com

Attorneys for Plaintiff M.D.


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


/s/ Barton R. Keyes

18